UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEASIA GOODSON, | **Case ID:** |
| Plaintiff, | **COMPLAINT** |
| -against- | Jury Trial Demanded |
| COMPASS GROUP USA, INC. d/b/a FLIK HOSPITALITY GROUP, and PATRICK CUNNINGHAM, individually, | |
| Defendants. | |

Plaintiff DEASIA GOODSON ("Plaintiff"), by and through her attorneys, SACCO &

FILLAS, LLP, complaining of Defendants COMPASS GROUP USA, INC. d/b/a FLIK

HOSPITALITY GROUP ("Corporate Defendant," "Compass Group") and PATRICK

CUNNINGHAM ("Individual Defendant," "Cunningham") (Individual Defendant and Corporate

Defendant together as "Defendants") herein, alleges upon knowledge as to herself and her own

actions, and upon information and belief as to all other matters, as follows:

**NATURE OF THE CASE**

1.  Plaintiff complains pursuant to the Title VII of the Civil Rights Act of 1964 ("Title VII"),

    New York State Human Rights Law, NYS Executive Law § 296, et seq. ("NYSHRL"),

    and the New York City Human Rights Law, New York City Administrative Code § 8-

    107(1), et seq. ("NYCHRL"), and seeks damages arising from sexual harassment, gender

    discrimination, and retaliation perpetrated by Plaintiff's supervisor, and the failure of

    Defendant to take prompt and effective remedial action. Plaintiff seeks compensatory and

    punitive damages, along with any other relief deemed just and proper.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (original federal question jurisdiction). Supplemental jurisdiction over the New York State and New York City law claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this cause of action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

4. Plaintiff Deasia Goodson was employed by Compass Group from June 1, 2022 to November 13, 2024.

5. At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to protection as defined by relevant federal, state, and city laws. At all relevant times herein, Plaintiff was an employee of Compass Group.

6. Defendant Compass Group USA, Inc., doing business as Flik Hospitality Group, is a Delaware corporation authorized to do business in New York, operating at locations including Dock 72, Brooklyn, NY, and The Hugh, New York, NY.

7. At all relevant times, Compass Group employed more than fifteen (15) employees and was an employer within the meaning of Title VII, the NYSHRL, and the NYCHRL.

8. Defendant Cunningham is an individual residing in New York and was employed by Compass Group as a Dining Service Director. At all relevant times, Cunningham was

Plaintiff's direct supervisor and exercised authority over the terms and conditions of her employment.

9. Defendant Cunningham personally engaged in the harassment and retaliation described herein and is therefore individually liable under the NYSHRL and NYCHRL.

## FACTUAL ALLEGATIONS

10. Plaintiff began working for Compass Group on June 1, 2022, as a Manager in Training, earning $60,000 per year.

11. Her responsibilities included event planning, budgeting, staffing, catering coordination, and marketing content creation for Dock 72, The Hugh, and The Savoy Club.

12. Defendant Cunningham served as Plaintiff's direct supervisor from the start of her employment.

13. General Manager Jill Dobias ("Dobias") conducted all of Plaintiff's performance evaluations, providing consistently positive feedback such as, "You're doing great, keep it up."

14. Plaintiff was promoted to Operations Manager in February 2023 and received a raise of $63,000 and then to Catering & Events Manager in November 2023 with a raise of $75,000.

15. On November 4, 2022, Plaintiff attended Flik's Innovations Forum in a professional capacity.

16. During the reception, Defendant Cunningham was visibly intoxicated, and Dobias acknowledged she too was intoxicated.

17. Cunningham approached Plaintiff, grabbed and caressed her left hand, and kissed it without consent. Plaintiff quickly pulled her hand away and told him, "Don't kiss my hand."

18. Moments later, as Plaintiff moved through the crowd, Cunningham stepped on her heel from behind and kissed her neck without consent. Plaintiff pushed him back and told him to return to the hotel to rest. This caused Plaintiff to feel embarrassed, uncomfortable, ashamed, and emotionally distressed. Other non-female employees were not treated this way.

19. Plaintiff immediately reported the unwanted touching to her supervisor, Dobias. Rather than offering support or taking appropriate steps to address the misconduct, Dobias responded in an unprofessional and inappropriate manner by asking, "Are you into it?" When Plaintiff clarified that the touching was unwanted, Dobias simply said, "Then tell him no thank you." This response not only trivialized the seriousness of the complaint but also failed to uphold her responsibility as a supervisor to ensure a safe and respectful workplace.

20. Later that night, Dobias ordered room service to Plaintiff's hotel room. Shortly after, Defendant Cunningham entered uninvited, sprawled on the floor eating, and ignored Plaintiff's requests to leave.

21. Cunningham then got into Plaintiff's bed, patted the mattress, and suggested she lie down with him.

22. Plaintiff twice called Dobias for help. On the second call, she told her that Cunningham was in her bed and to "please come now." Dobias arrived, pried Cunningham out of the bed, and escorted him to his room.

23. However the harassment continued. Once back in his hotel room, Cunningham called Plaintiff from his hotel phone, asking her to "watch a movie" and adding, "It will only take 20 minutes," implying sexual intent. Plaintiff refused and locked her door. Plaintiff

understood Defendant Cunningham's remark that watching a movie would 'only take 20 minutes' as a sexual proposition, given that movies are longer than 20 minutes.

24.    The next morning, Cunningham appeared hungover and told Plaintiff he had "a good time" the previous night. He made no acknowledgment of his inappropriate behavior or its impact on Plaintiff. His failure to take accountability and his casual dismissal of the incident reveal a concerning, predatory character—one that prioritizes his own gratification over the well-being of others. Cunningham's inability or unwillingness to consider how his actions affected Plaintiff further underscores his disregard for boundaries and lack of respect for consent.

25.    Plaintiff verbally reported the harassment to Dobias on November 4, 2022. However, no documented investigation or disciplinary action was taken. Dobias did not meet with Plaintiff after the incident while she was on site; rather, she was offsite for the entire following week and did not acknowledge the incident until November 9, 2022, five days later, when she called Plaintiff. Although it was Dobias's responsibility as a supervisor to address and appropriately handle the situation involving Cunningham, instead, she shifted that burden onto Plaintiff by asking how she wanted to handle it. Plaintiff made it clear that she wanted Cunningham to be held accountable for his actions and hoped that by addressing the issue, it would prevent him from doing the same to others.

26.     Dobias suggested she could speak to Cunningham directly, Plaintiff had already lost confidence in her ability to act effectively and ethically—especially given Dobias's dismissive response to the initial report and her delay in addressing the matter. Plaintiff's lack of trust was further reinforced by the fact that Dobias had personally witnessed

Cunningham in Plaintiff's hotel room during the incident and was the one who physically removed him from the room—yet still failed to report or escalate the situation.

27. This inaction, despite being a direct witness to the sexual harassment, signaled to Plaintiff that Dobias was unwilling or incapable of fulfilling her duty to protect her. Plaintiff also feared that if Dobias confronted Cunningham without her involvement, she would be potentially face retaliation, including becoming a direct target of Cunningham and risking her job security. As a result, and despite the emotional toll it took, Plaintiff took it upon herself to confront Cunningham and inform him that his actions were inappropriate and unwelcome.

28. Following Plaintiff's conversation with Cunningham in which she addressed his inappropriate conduct, she experienced clear retaliation from him. While Cunningham had displayed a temper early on in Plaintiff's employment, his behavior noticeably worsened after she confronted him. He frequently undermined her in meetings, talked over her, and dismissed her input in front of colleagues, creating a hostile and demoralizing work environment. His aggression escalated to physical intimidation, including multiple instances where he would throw objects across the room in Plaintiff's direction—actions that were not only unprofessional but threatening. This pattern of retaliatory conduct further impacted Plaintiff's sense of safety and support in the workplace, and no meaningful action was taken by management to intervene or hold Cunningham accountable.

29. Due to the ongoing discomfort and hostility, Plaintiff began working in the Dock 72 café to avoid being in close proximity to Cunningham in the office. His presence had become intolerable, and communication with him was increasingly distressing. This led Plaintiff to

6

withdraw from social interactions at work and feel increasingly isolated. At this point, she realized she could no longer trust either Cunningham or Dobias to protect her or manage the situation appropriately.

30. On December 14, 2023, another employee, Renee, was also sexually harassed and disclosed the incident to Plaintiff, who advised her to report it. The next day, when Plaintiff brought Renee's case to Dobias' attention, Dobias responded with urgency and insisted that Renee report the incident to HR immediately—despite Renee's hesitation—stating, "It is my job to protect you—especially you." Before this interaction, Dobias asked Plaintiff to leave the room so Renee could have alone time; however, Renee later stated that she felt more comfortable with Plaintiff present.

31. In contrast, when Plaintiff reported her own incident, Dobias waited five days before even acknowledging the situation and did not demonstrate the same level of urgency, compassion, or advocacy. After Renee shared her experience with both Plaintiff and Dobias on Friday, December 15, 2023, Dobias again stated to Renee, "It is my job to protect you—especially you." The emphasis on "especially you" raised concern for Plaintiff, who could not help but notice the stark difference in treatment between how her situation was handled compared to Renee's. Plaintiff sincerely hopes this disparity in response was not influenced by race or ethnicity, as both Dobias and Renee identify as Jewish, while Plaintiff is a Black woman.

32. When Plaintiff later informed Dobias that she would be submitting a letter about her own incident, Dobias asked if Plaintiff was implying that she had failed to protect her. Plaintiff confirmed that she felt Dobias had not protected her nor handled the situation justly, ethically, or with the same seriousness as she had in Renee's case. In response, Dobias

stated, "If that's how you feel, we can no longer be friends." This comment was deeply inappropriate and unprofessional, especially coming from a supervisor. It is not the role of a supervisor to leverage personal friendship in response to legitimate concerns about workplace misconduct. By framing Plaintiff's decision to speak up as a betrayal of their "friendship," Dobias blurred professional boundaries and attempted to guilt Plaintiff for exercising her right to report mistreatment—undermining the seriousness of the issue and further reinforcing Plaintiff's perception that Dobias was unwilling to carry out her supervisory responsibilities with fairness and accountability.

33.    On December 17, 2023, Plaintiff submitted a written harassment statement to Dobias.

34.    After the written complaint, Defendants engaged in retaliation by withholding event information, excluding Plaintiff from meetings, and imposing a rigid on-site schedule dictated by Cunningham.

35.    Plaintiff was excluded from meetings directly relevant to her catering role, including two meetings about catering practices at The Hugh and a Dock 72 tasting meeting involving building manager Vincent Tricarico, despite being included in earlier scheduling communications.

36.    Plaintiff requested to work remotely on days when no events or tours were scheduled, and made this request specifically in an effort to avoid working with Cunningham. This was not a request to work exclusively from home, but a reasonable attempt to create distance from an individual who had previously sexually harassed her and continued to retaliate against her in the workplace. Plaintiff clearly expressed her discomfort and concern about continuing to share a workspace with Cunningham. Despite this, and despite prior

assurances from Dobias that the situation would be addressed, no meaningful changes were implemented to accommodate her request or ensure her safety and well-being at work.

37. On March 26, 2024, in apparent retaliation for Plaintiff's prior request to work remotely, Dobias and Cunningham held a Microsoft Teams meeting with Plaintiff to enforce a rigid on-site schedule. During the meeting, Plaintiff was instructed to work a full eight hours on-site each day, regardless of whether her presence was operationally necessary. Following the meeting, Dobias sent a follow-up email stating, "Thank you for taking the time to connect with us this week in regard to expectations on your schedule. Moving forward you will be responsible to work the management schedule Patrick had provided on our call unless events/catering needs shift the timing to earlier or later in the day. As a Salary Exempt Manager you are expected to work a minimum of 40 hours per week." This sudden enforcement of an inflexible schedule—after Plaintiff had reasonably requested limited remote work to avoid contact with Cunningham—demonstrates retaliatory intent and a continued disregard for Plaintiff's concerns about her safety and emotional well-being in the workplace. It should be noted that since the beginning of Plaintiff's employment, Dobias had consistently instructed Plaintiff to leave once her work was finished, further highlighting the abrupt and retaliatory nature of this change in expectations.

38. On April 1, 2024, Plaintiff responded in writing, noting her prior flexible schedule and lack of performance issues, but her objections were ignored.

39. In an effort to remove herself from the toxic environment, Plaintiff reached out to several leaders within the Compass Group organization to inquire about an internal transfer. Initially, many expressed a willingness to help. However, once these leaders looked into the reason behind her transfer request—namely, her concerns about Dobias and

Cunningham's conduct and management—all communication abruptly ceased. Plaintiff felt unsupported, trapped, and unable to escape an unhealthy work environment while still under the supervision of Jill and Patrick. With no clear path forward and her well-being at risk, she made the difficult decision to take a leave of absence.

40. Plaintiff took a leave of absence from April 29 to June 24, 2024, due to the severe emotional distress caused by the ongoing harassment, retaliation, and lack of support from her supervisors. During this time, she filed a workers' compensation claim related to the psychological and emotional impact of the hostile work environment. In May 2024, the Judge ruled in Plaintiff's favor, acknowledging the emotional harm she endured and ordering Compass Group to cover the costs of therapy. Despite this ruling, the underlying issues remained unaddressed, and upon her return, no meaningful changes were made to protect her or improve her working conditions. As a result, Plaintiff was left with no reasonable option but to resign. The ongoing retaliation, lack of accountability from leadership, and failure to ensure a safe work environment ultimately led to her constructive termination.

41. Compass Group further retaliated against Plaintiff by appealing the workers' compensation decision shortly after the judge ruled in her favor. Despite clear findings that Plaintiff had suffered emotional harm due to the hostile work environment, Compass Group challenged the ruling, asserting that the judge had erred in their decision. This action not only demonstrated the company's unwillingness to accept responsibility for the harm caused but also added to Plaintiff's emotional burden by forcing her to continue defending the legitimacy of her trauma. The appeal served as yet another form of retaliation, aimed at

undermining Plaintiff's credibility and discouraging her from pursuing further accountability.

42.  As a result of Defendants' unlawful conduct—including harassment, discrimination, wage violations, and retaliatory termination—Plaintiff suffered emotional distress, lost wages, and other economic and non-economic damages.

## FIRST CAUSE OF ACTION
**Sexual Harassment/ Hostile work Environment**
**(Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*)**
*Against Corporate Defendant*

43.  Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

44.  Title VII of the Civil Rights Act of 1964 prohibits sexual harassment/discrimination in employment.

45.  Plaintiff was subjected to unwelcome and inappropriate sexual conduct by a her supervisor, including unwanted physical touching and verbal misconduct.

46.  Plaintiff promptly reported the harassment to her supervisor. To which, no corrective action was taken. Plaintiff was forced to confront the harasser herself, experiencing ongoing harassment and retaliation.

47.  Defendants' failure to investigate or discipline the perpetrator allowed a hostile work environment to persist.

48.  As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages including emotional distress and lost wages and such other and further damages as may be shown at trial.

## SECOND CAUSE OF ACTION
**Retaliation**

11

**(Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*)**
*Against Corporate Defendant*

49. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

50. After reporting harassment and raising safety concerns, Plaintiff experienced retaliation from both the harasser and supervisors.

51. Retaliation included undermining, exclusion, increased hostility, and stricter, retaliatory work schedules and such other and further mistreatment as set forth hereinthroughout.

52. Compass Group appealed Plaintiff's successful workers' compensation claim, further retaliating against her.

53. These acts constitute unlawful retaliation for engaging in protected activity.

54. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages including emotional distress and lost wages.

**THIRD CAUSE OF ACTION**
**Sexual Harassment / Hostile Work Environment**
**((NYSHRL Executive Law § 296 *et seq.*)**
*Against All Defendants*

55. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

56. New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's . . . age, race, creed, color, national origin, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from

12

employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

57.    Plaintiff was subject to sexual harassment by Cunningham, creating a hostile work environment.

58.    Defendants failed to prevent or stop the harassment despite knowledge of the conduct.

59.    Plaintiff's emotional distress and work performance were adversely affected.

60.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages including emotional distress and lost wages.

**FOURTH CAUSE OF ACTION**
**Retaliation**
**(NYSHRL Executive Law § 296 et seq.)**
*Against All Defendants*

61.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully set herein.

62.    Plaintiff reported harassment and sought protection from Cunningham's misconduct.

63.    Defendants' retaliated by escalating hostility, undermining Plaintiff, and failing to address her concerns.

64.    Plaintiff suffered adverse employment consequences, including a hostile work environment and constructive discharge.

65.    Such retaliation violates the NYSHRL's anti-retaliation provisions.

66.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages including emotional distress and lost wages.

**FIFTH CAUSE OF ACTION**
**Sexual Harassment / Hostile Work Environment**
**(NYSHRL)**
*Against All Defendants*

13

67. Plaintiff incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully set forth herein.

68. The New York City Human Rights Law ("NYCHRL") prohibits discrimination on the basis of sex / gender.

69. Plaintiff was harassed by Cunningham in violation of the New York City Human Rights Law.

70. Defendants failed to take prompt remedial action to stop the harassment.

71. The ongoing harassment created an intimidating, hostile, and offensive workplace.

72. The conduct violated the broader protections afforded by the NYCHRL.

73. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages including emotional distress and lost wages.

## SIXITH CAUSE OF ACTION
### Retaliation
### (NYSHRL)
### *Against All Defendants*

74. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

75. After engaging in protected activity, Plaintiff faced retaliation from Cunningham and Compass Group.

76. Retaliatory actions included increased hostility, exclusion, and failure to address Plaintiff's reasonable requests for accommodation.

77. The retaliation contributed to Plaintiff's constructive discharge and emotional distress.

78. These acts violate the anti-retaliation provisions of the NYCHRL.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment:

14

(a) Awarding full back pay and benefits and pre-judgment interest;

(b) Awarding Plaintiff compensatory damages;

(c) Awarding punitive damages;

(d) Awarding reasonable attorneys' fees, costs, and expenses; and

(e) Awarding such other legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: Astoria, New York
      August 15, 2025

SACCO & FILLAS LLP
By:    */s/ Clifford Tucker*
Clifford Tucker, Esq.
31-19 Newtown Ave, Seventh Floor
Astoria, NY 11102
Tel: 718-269-2243
Fax: 718-559-6517
Ctucker@saccofillas.com
*Attorneys for Plaintiff*

15